(35 Misc. Rep. 157.)

## BALTES v. UNION TRUST CO. OF NEW YORK.

(Supreme Court, Special Term, New York County. May, 1901.)

TRUST AGREEMENT—EXECUTION—REPUDIATION BY EXECUTOR OF DONOR.

An owner of a large estate conveyed all his real estate to his son by a deed absolute in form, the son executing a paper agreeing, on the death of the donor, to convey a certain share of the estate to the daughter of the donor, or, if not living, to her descendants, and to supply the donor with such means as might be necessary for his support during life. Thereafter another agreement was made providing for certain payments to the donor, and for a division on the death of the donor of the personalty and any surplus income between the son and daughter of the donor. Upon the death of the donor, a substituted trustee was appointed. *Held* that, where the annuity was duly paid to the donor or provided for in any manner, his reversionary interests, if any, passed, and his executor could not repudiate the agreement, and recover of the substituted trustee the value of the property divided and distributed by it.

Action by Fernando Baltes, executor of Edmund Waring, against the Union Trust Company of New York. Complaint dismissed.

Leventritt & Brennan, for plaintiff.
Peckham, Miller & King, for defendant.

SCOTT, J. In 1876, Edmund Waring, the plaintiff's testator, was the owner of a large estate, consisting of both real and personal property. On November 8, 1876, he conveyed all his real property to his son William E. Waring, by a deed absolute in form, and William simultaneously executed a paper in which he agreed that he would immediately, upon the death of said Edmund Waring, convey one equal one-half part of said real estate or the proceeds thereof to Katherine G. Secor, daughter of Edmund Waring, or, if she were not then living, to her descendants. It was further provided that the agreement might at any time be canceled, and might from time to time be modified by the mutual agreement of Edmund and William E. Waring. At the same time William E. Waring executed another paper, wherein, in consideration of the conveyance to him of the real estate, he agreed to supply to his father, Edmund Waring, such moneys as he might require for his support and maintenance during his life, and also such further sum, not exceeding $1,800 per annum, as said Edmund Waring might personally request, if he should wish to pay the same for the support and maintenance of his wife, Mrs. Clara K. Waring. More than four years afterwards, and on March 16, 1881, Edmund Waring, and his son William E. Waring, and his daughter Katherine G. Secor, entered into an agreement which forms the basis of this action. The agreement recites that certain real and personal property had been theretofore assigned by Edmund Waring to William E. Waring, and a declaration of trust respecting

the real estate made by William E. Waring, and an agreement entered into as to the support of Edmund Waring, and for the payment to him of certain moneys; that a further agreement had been made between the parties in respect to said personal property and the income therefrom and from the real estate during the life of said Edmund Waring. In order to carry out this latter agreement, it was then provided and agreed "that said William E. Waring does and shall hold said personal property during Edmund Waring's life in trust to pay annually from the income thereof the sum of forty-eight hundred dollars to said Edmund Waring, to be made in equal monthly payments on the first day of every month, and to divide the surplus of said income, and the rents, issues, and profits from the real estate, * * * equally between said William E. Waring and Katherine G. Secor during the life of said Edmund Waring, * * * and on the death of said Edmund Waring to divide any surplus income then unpaid and all of said personal property equally between said William E. Waring and Katherine G. Secor." It was further provided that the agreement was not to affect in any way the declaration of trust dated November 8, 1876, respecting the real estate, but that it was intended to supersede the other agreement made at the same time relative to the support and payment of money to Edmund Waring. There was a further provision that in case a certain will of Edmund Waring, dated January 8, 1878, should be in force at his death, and his personal property should be insufficient to pay certain legacies therein specified, then said legacies should be paid by William E. Waring out of the personal property referred to in the agreement, or, if the division of the personal property should be effected before such insufficiency had been ascertained, then William E. Waring and Katherine G. Secor each agreed to pay one-half thereof. By a supplementary agreement dated March 18, 1881, executed by the same parties, it was provided that William E. Waring would, if Edmund Waring so desired, make certain monthly payments to Mrs. E. Waring, the agreement to do so terminating, however, on the death of Edmund Waring. William E. Waring died on October 5, 1882, leaving a will, by which he devised and bequeathed all his estate, real and personal, to his widow, Frederika W. Waring, whereupon Edmund Waring and Katherine G. Secor petitioned this court for the appointment of a trustee in place and stead of said William E. Waring, and an order was accordingly made appointing the defendant herein such trustee. The appointment of a substituted trustee was opposed by Frederika W. Waring upon various grounds, but the order therefor was ultimately affirmed by the court of appeals, after that court had modified the order of the special term "by striking out so much thereof as assumes to adjudicate upon the validity of the trust, if such provisions there are." The defendant thereupon commenced two actions in this court against Frederika W. Waring, widow of William E. Waring, one to recover possession of the real estate, and one to recover possession of the personal property, in both of which it was successful, the judgment in each case reciting that the estate, right, or title of the plaintiff in or to said property was for the life of Edmund Waring. There were at this time three persons, and only

three, besides the substituted trustee, who could claim any interest in or right to the personal property. These were Edmund Waring, Katherine G. Secor, and Frederika W. Waring, and they united in an agreement, the validity of which is put in issue in this action. This agreement, which was dated February 19, 1888, recited all the deeds, agreements, declarations of trust, actions, proceedings, order, and judgments hereinbefore recited in detail. It further recited that the signatory parties were the only persons interested in the real estate and personal property, and that the parties of the first, second, and third parts, to wit, Edmund Waring, Katherine G. Secor, and Frederika W. Waring, were desirous that all litigation touching the same should cease. It was thereupon mutually agreed, in addition to certain matters not material in this action—First, that the $4,800, which, by the agreement of March 16, 1881, was to be paid annually to Edmund Waring out of the income derived from the personal property, should thereafter be paid by the substituted trustee out of the rents, issues, and profits of the real estate; second, that, after payment of certain sums by way of counsel fees and commissions, the balance of the personal profits should be divided equally between Katherine G. Secor and Frederika W. Waring; third, that, except as modified by this agreement, the trust with reference to the real estate should continue during the lifetime of the party of the first part, as provided in the deed to William E. Waring, and the declaration of trust executed by him. This agreement, after its execution by Edmund Waring, Katherine G. Secor, and Frederika W. Waring, was also executed by the defendant, and was thereupon carried into effect, the personal property being divided as therein provided, and the income of $4,800 per annum being regularly paid to Edmund Waring by the defendant, out of the rents of the real estate, until his death on August 16, 1895, he having survived his daughter Katherine G. Secor, who died on March 9, 1892. It does not appear that Edmund Waring, during his lifetime, ever raised any question as to the validity of the agreement under which the personal property was divided between his daughter and his son's widow. His executor, by his action, does attack the validity of this division, and seeks to recover from the defendant the value of the personal property, which was divided with the testator's acquiescence and co-operation. His position, broadly stated, is that such division was in contravention of the trust under which the personal property was held by William E. Waring in the first instance, and afterwards by the defendant as substituted trustee, and he cites, in support of his action, the familiar rule of the Revised Statutes, that, "if the trust is expressed in the instrument creating the estate, every sale, conveyance or other act of the trustee in contravention of the trust shall be absolutely void." Rev. St. (Banks' 8th Ed.) 2439, § 65. The instrument which created the trust in the present instance was the agreement of March 16, 1881, wherein were declared the terms of the trust upon which William E. Waring held the personal property. By that agreement the duration of the trust was limited to the lifetime of Edmund Waring, and during that term Edmund Waring was to have a life estate to the extent of $4,800 per annum, and William E.

Waring and Katherine G. Secor were each to have a life estate to the extent of one-half the surplus after the payment of Edmund's annuity and the other items charged upon the income. It is clear that none of them took any title to the corpus of the estate by reason of their life estates. Rev. St. (Banks', 8th Ed.) 2438, § 60. If, therefore, Edmund Waring retained any interest in, or title to, the corpus of the personal property, it was for some other reason than the fact that a life estate was reserved to him. So long as the trust continued—that is to say, during the lifetime of Edmund Waring—the whole estate, both in law and equity, vested in the trustee.

There was, however, reversionary interest vested in some one. If, as claimed by defendant, that reversionary interest became, by the deed of trust, vested in William E. Waring and Katherine G. Secor, the executor of Edmund can assert no claim to the personal property, because Edmund himself had no interest therein which survived him. For the contention that they did take vested remainders under the trust agreement there is much to be said. The statute provides that a future estate is vested when there is a person in being who would have an immediate right to the possession of the property upon the ceasing of the intermediate or precedent estate. Rev. St. (Banks' 8th Ed.) 2432, § 13. Hence, if the trust agreement had in terms granted to William E. Waring and Katherine G. Secor the personal property upon the death of Edmund Waring after his life estate or interest therein had terminated, there can be no doubt that they would have taken an unqualified vested remainder in the corpus of the estate, which, in the event of the death of either of them, would have passed to their personal representatives. It is claimed that the trust deed did, in effect, operate as a grant of such an estate or interest. The trustee undertook that upon the death of Edmund Waring he would divide the personal property equally between himself and his sister. It seems to be now well settled in this state that a direction or agreement to divide an estate upon the happening of a certain event is equivalent to an express gift where the persons among whom the division is to be made are certain and in being at the time of the taking effect of the instrument containing the direction for a division. The plaintiff, however, insists that there should be applied to this case the rule to be found in a long line of authorities, which hold that, where the only gift is found in a direction to divide or pay at a future time, the gift is future, not immediate, contingent, not vested. Hence it is argued that the future estates of William E. Waring and Katherine G. Secor were contingent upon their surviving their father, and terminated upon their death before him; that upon the termination of their contingent estates or interest in the personalty the reversion therein was undisposed of by the trust agreement, and vested in Edmund Waring, under the statutory rule that "where an express trust is created every estate and interest not embraced in the trust, and not otherwise disposed of, shall remain in, or revert to, the person creating the trust or his heirs, as a legal estate." Rev. St. (Banks' 8th Ed.) 2439, § 62. The rule that a remainder is to be deemed contingent, and not vested, where the only gift is to be found in a direction to pay over or divide at a future

time, is not of universal application, and is subject to important exceptions. As was said by the court of appeals: "It is true that the rule has many exceptions, and is seldom alone relied upon." Clark v. Cammann, 160 N. Y. 315–327, 54 N. E. 709. In re Brown, 154 N. Y. 313, 48 N. E. 537, there were no express words of gift to the grandchildren of testator, but there was a provision that, upon the termination of a life estate or estate created by the will, "the pr'ncipal be equally divided between the children of my said daughters absolutely for their own property, subject, however, to the above-provided life estates in the same." It was held that inasmuch as the grandchildren were in being at the time of testator's death, and, under the will, had the immediate right to the possession of the estate upon the termination of the life estates, they took vested remainders in the estate of the testator. In Clark v. Cammann, supra, the will gave a fund of $10,000 to his executors in trust to pay the income to a niece for life, "and from and immediately after her decease, upon trust, to pay over and divide the said principal sum of $10,000 unto and among all her children, share and share alike, * * * and to their lawful representatives, forever, as tenants in common, per capita, the issue of any such child who may then be dead to take his or her deceased parent's share." Although there were no express words of gift to the grandchildren, other than the direction to the trustees to pay over and divide, the court said that, if the testator had stopped with the directions to pay over and divide the capital sum, upon the decease of the life tenant, "among all her children, share and share alike," it would not have hesitated to hold that the legacies vested in the sons. Under the will as drawn, however, it felt constrained to hold the legacies contingent, and the reason for so holding seems to distinguish the present case from many authorities cited by the plaintiff. It said: "No issue of the sons was in being at the death of the testator, and it was uncertain as to whether they ever would have issue. The remainder was therefore contingent, and not vested, for the reason that the persons to whom, or the event upon which, the estate was limited to take effect remained uncertain until the termination of the life estate." Under the trust agreement in the present case, there was no uncertainty as to the persons to whom the personal estate was to go upon the death of Edmund Waring. If, however, the plaintiff be right in his contention that the reversionary interest of William E. Waring and Katherine G. Secor was contingent upon their surviving their father, and that upon their predecease this reversionary interest became vested in Edmund Waring, there still remains an insurmountable difficulty in the way of his recovery in this action. Edmund Waring's relation to the personal property would then have been, when the agreement for division was made, that he had a life estate in the fund to the amount of his agreed annuity; that, owing to the death of William E. Waring, he had a reversionary interest in one half of the corpus of the personal estate, and a possible reversionary interest in the other half, dependent upon his surviving Katherine G. Secor. His life interest he held under the trust agreement, and this he could not alien or dispose of in any way. His reversionary inter-

est in the corpus of the estate he did not hold under the trust agreement, but held it, if at all, because it was not provided for by that agreement. This interest was his own, to do with as he pleased. He could sell it or give it away. What he did was to actively cooperate and concur in its distribution between Katherine G. Secor and Frederika W. Waring, and by his act in so doing he induced the defendant to make or consent to the distribution of the trust. In signing the agreement for division, he, in effect, gave away, not his inalienable life estate, but his remainder or reversionary interest in the fund, with which he had the right to deal as he saw fit. Under these circumstances, he would not have had in his lifetime, nor has his executor now, any standing in a court of equity to repudiate the agreement for division, and attempt to undo that to which he bound himself and induced others to become bound. Steinway v. Steinway, 24 App. Div. 104, 48 N. Y. Supp. 1046; Evans v. Benyon, 37 Ch. Div. 329. The defendant is entitled to a judgment dismissing the complaint upon the merits, with costs, and an extra allowance of $250.

Complaint dismissed, with costs.